J-S01012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.F.F., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.E.F. | : | |
| | : | |
| Appellant | : | No. 1436 MDA 2018 |

Appeal from the Order Entered July 27, 2018
In the Court of Common Pleas of York County
Civil Division at No(s): 2017-FC-000596-03

BEFORE: PANELLA, P.J., MURRAY, J., and PELLEGRINI[*], J.

MEMORANDUM BY PANELLA, P.J.: **FILED MARCH 15, 2019**

B.E.F. ("Mother") appeals from the order granting D.F.F., Jr. ("Father") sole legal custody, and primary physical custody, of the parties' minor son, B.F. ("Child") (born December 2009); finding Mother in contempt of a prior order of court; awarding Father $1,000.00 in counsel fees; and denying Mother's petition for contempt.[1] We affirm.

The trial court set forth the following factual and procedural history of this case:

The parties were married on June [] 20[0]1.[2] Father had a daughter, [Sa.F.], from a previous relationship. During their

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's sister, S.F., turned 18 prior to the conclusion of the custody trial. Accordingly, the order only addresses the custody of Child.

[2] The trial court acknowledged that its opinion contained a typographical error, listing the year of marriage as 2011.

marriage, the parties had two children, S.F. and [Child]. Father worked as a mechanic. Mother originally had her own business that she ran as a psychologist, where [Sa.F.] worked during high school. According to the testimony, Mother sold her business to become a stay-at-home [m]other and to homeschool S.F. and [Child] when S.F. was in the fourth grade. Father was the primary financial provider for the family, but he did find time to coach S.F.'s soccer team. Mother did eventually start her own tea business in 2014 from the home.

In April of 2017, the parties separated. It is not disputed that Father had committed adultery during their relationship. On April 5, 2017, Mother filed a Petition for a Protection from Abuse (PFA) Order against Father and a Temporary PFA Order was granted on the same date. On April 8, 2017, Father sent a message of "Hey." The next day, Father sent Mother a text stating the first message was sent in error by his new phone. On April 12, 2017, Father sent Mother another message saying, "Here. A box out here if you want." Father was indicating that he had arrived to pick up the children for a visit and had left a box on the sidewalk of Mother's items. All of this happened prior to the time scheduled for a hearing for the final PFA had even occurred. Mother filed a Petition for Indirect Criminal Contempt (ICC) for Father's text communication []. Father was arrested on April 13, 2017 for the ICC.

On April 20, 2017, the parties agreed to the entry of a Final PFA for a no contact order for a twelve (12) month period without admissions. The PFA did indicate that Father could contact S.F. as long as he did not discuss the PFA proceedings with her, but the Final PFA was silent in regards to [Child]. On May 25, 2017, Father pled guilty to the ICC and was sentenced with a fine and six months of probation. This conviction also extended the PFA for an additional year, with an expiration to occur on April 17, 2019.

Father filed a Petition for Custody because he had not been allowed to see or talk with [Child]. At the conciliation conference, Mother admitted that she did not think that Father was a threat to the children, but she did request a threat of harm assessment be conducted. At this time, the parties shared legal custody. Mother was granted primary physical custody, and Father was granted partial physical custody on alternate weekends with Monday overnights on the alternate weeks. It was also requested that there would be an amendment to the PFA to allow contact

between the parties strictly as it relates to custody, which was granted on December 22, 2017.

Father filed a Motion for Contempt of the Custody Order on December 13, 2017. In his petition, he alleges two counts of contempt, specifically that Mother failed to permit Father to exercise shared legal custody when she unilaterally made medical decisions for [Child] and refused to take the child to the Urgent Care when the child was sick and throwing up. Father also alleges that Mother withheld physical custody from Father on his weekend from Friday, November 24, 2017[,] to Sunday, November 26, 2017, with Mother alleging that the child was too sick to visit and even too sick to speak with Father on the phone. Mother still refused to take the child to the Urgent Care. Mother counter-filed with a Petition for Contempt of a Custody Order on January 17, 2018. In her Petition, Mother also alleges two counts of contempt against Father. In the first count, Father was ordered to complete a Threat of Harm evaluation in the Interim Order and failed to timely complete the evaluation or provide Mother with a copy of the evaluation. Mother also alleges that Father arrived late to exchanges on two occasions, once on October 23, 2017 and once on November 12, 2017. Both petitions for contempt were reserved for time of trial.

Father did undergo a threat of harm evaluation[3] by Chad Shaeffer at Spirit Trust Associates. It is noted by the [c]ourt that delays in

_____

[3] A threat of harm evaluation is governed by 23 Pa.C.S.A. § 5329, which provides, in pertinent part:

(c) Initial evaluation.--At the initial in-person contact with the court, the judge, conference officer or other appointed individual shall perform an initial evaluation to determine whether the party or household member who committed an offense under subsection (a) poses a threat to the child and whether counseling is necessary. The initial evaluation shall not be conducted by a mental health professional. After the initial evaluation, the court may order further evaluation or counseling by a mental health professional if the court determines it is necessary.

\*\*\*

the evaluation were related to delay in payments. The evaluator found that Father posed a risk of harm to future paramours and a risk of harm to [Child] if custody would occur and [Child] were to have contact with Father's paramour. Father disputes the evaluation. This determination was based in large part on the facts provided by Mother that w[ere] undisclosed to Father or the [c]ourt. The information was provided to the evaluator at the eleventh hour without Father being given an opportunity to respond. After the report was issued, Father wrote a letter to the evaluator in response, which he provided as a separate exhibit.

A Joint Stipulation was filed on March 27, 2018. Prior to the start of trial, both parties became aware that [Child] was suffering from gastrointestinal issues. The first two days of the [c]ustody [t]rial were held on March 29, 2018 and April 2, 2018. At that time, Mother alleged that [Child]'s gastrointestinal issues stemmed from Father giving the child a McDonald's Happy Meal and sugary candy over Easter weekend. It was further indicated to the [c]ourt by Mother that [Child] had not been to the doctor since he was two weeks old. The [c]ourt was concerned with [Child]'s constant bouts of illness and vomiting, so this [c]ourt ordered that Father arrange for [Child] to have a medical appointment. The child had also had vision issues that Father had noticed and addressed by getting appropriate care and glasses for the child. Mother had not obtained glasses and was resistant to doing so. This [c]ourt then made a report to York County Office of Children, Youth and Families for investigation of medical neglect. Mother took over setting up medical treatment and, due to the PFA, effectively shut Father out of participation.

An additional day of trial occurred on June 14, 2018. Closing arguments by both parties were submitted via briefs on June 25, 2018.

Trial Court Opinion, 7/27/2018, at 1-4.

Prior to the custody trial, the court entered an interim custody order, awarding shared legal custody to Mother and Father, with Mother having

---

(f) Costs.--The court may order a party to pay all or part of the costs of the counseling and evaluations under this section.

primary physical custody, and Father having partial physical custody on alternate weekends from Friday at 6:00 p.m. until Sunday at 8:00 p.m., as well as every Monday at 4:30 p.m. until Tuesday at 7:30 a.m. **See** Interim Order for Custody Pending Trial, 9/29/17, at 5-6.

The order precluded Father's family from having any contact with Child or S.F. **See id**., at 6. Further, the order required Father to obtain a threat of harm evaluation, although the order notes "Mother concedes that she does not believe that Father poses a current risk to the children . . ." **See id**., at 3.

Following three hearings, the trial court issued a detailed opinion and order on July 27, 2018. This order provided Father with sole legal custody and primary physical custody of Child. **See** Order of Custody, 7/27/18, at 1, 4. It also granted Mother partial physical custody, on alternate weekends, from Thursday after school until the start of school Monday morning. **See id**., at 4. On the weekends Mother does not have physical custody, the order provides Mother with physical custody from Sunday at 6:00 p.m. until Monday at the start of school.[4] **See id**.

During summer, the order provides each parent with two non-consecutive weeks of custody. **See id**. With regard to holidays, the court

_____

[4] The order contains specific times for the exchanges to the extent that Child does not attend a brick and mortar school.

granted Father physical custody for all holidays, except Mother's Day, concluding that Mother does not celebrate holidays. ***See id***., at 5.

The court also denied Mother's petition for contempt, and granted Father's petition for contempt, ordering Mother to pay Father $1,000.00. ***See id***., at 17, Trial Court Opinion, 7/27/18, at 28-29. The court also ordered Mother to pay the costs of the threat of harm evaluation. ***See*** Order of Custody, 7/27/18, at 17. Mother then filed this timely appeal.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred or abused its discretion when it changed the status quo of Mother as shared legal and primary physical custodian to sole legal and majority physical custody to Father when the trial court:

   a. Relied on statements and facts not in evidence;

   b. Discounted the testimony of the expert witness stating without evidence other than speculation of Father that Mother manipulated the [threat of harm] evaluation;

   c. Did not permit Mother reasonable time to complete her testimony and refused to permit her to offer rebuttal to testimony proffered by Father's witness;

   d. Incorrectly determined that factors significantly weigh in favor of Father, discounting Father's domestic violence, Mother as primary caregiver of the child since birth, [and] the child's stability and wellbeing;

   e. Failed to award any holidays to Mother in contraindication of the prior order of custody developing the record about holiday time celebrated by Mother;

   f. Displayed various verbal and physical conduct towards Mother in its substitut[ing] its personal standard and bias

- 6 -

instead of maintaining neutrality, all of which tainted its determination of custody.

2. Whether the trial court erred or abused its discretion when it found Mother willfully disobeyed the court order in contraindication of Father's own evidence.

3. Whether the trial court erred or abused its discretion when it found that Father was not in contempt of court for intentionally returning the child late multiple times, for his failure to obtain the [threat of harm] evaluation as ordered by the October pretrial and for the trial court's decision to order Mother to reimburse Father for his [threat of harm] evaluation.

Mother's brief at 22-23 (unnecessary capitalization and suggested answers omitted).[5]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

_____

[5] Mother's argument section does not align with her statement of questions involved, as Mother combines several sections into one argument. Further, Mother includes no argument regarding question three.

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

This Court has further defined our standard of review: stated the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted). With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338.

The Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider in addressing a petition to modify custody. *See E.D. v. M.P.*, 33 A.3d 73, 80-81 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

- 8 -

These factors are:

## § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

Further, we have explained:

Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal. . . .

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's

explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (quotation marks and citations omitted).

Mother does not contend that the trial court failed to consider any specific factor. Rather, Mother asserts that the trial court incorrectly weighed the custody factors in favor of Father, discounting Father's domestic violence,[6] Mother's role as the primary caregiver, and Child's stability and wellbeing. *See* Mother's brief, at 31. Mother argues that she was the primary caretaker for Child, including homeschooling Child, and recounts Child's medical issues and her responses to them. *See id*., at 31-40.

Mother also notes the trial court must consider the parental duties performed by each party on behalf of the child, and the need for stability and continuity in the child's education, family life, and community life. *See id*., at 40. Mother asserts that the trial court failed to take into consideration the stability of Child in uprooting him from his home and discontinuing his homeschooling, and failed to account for the activities he engaged in with Mother, including taking piano lessons. *See id*. Mother faults the trial court

---

[6] Mother did not assert that the trial court erred in discounting Father's domestic violence in her Rule 1925(b) statement. Accordingly, this issue is waived. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). Notwithstanding Mother's waiver of this issue, the trial court appropriately considered Father's history of abuse.

- 11 -

for failing to consider the conditions in Father's home, which include Father and Father's paramour not coming home until at least 5 p.m., and the fact there are three other siblings, either step-siblings or half-siblings, in the home. *See id*.

Further, Mother faults the trial court for failing to award her any holiday time, as Mother claims she presented evidence "that Mother does celebrate Jewish holidays." *See id*., at 42. Additionally, Mother notes that the parenting plans submitted by the parties included holidays for both parents.[7] *See id*., at 42-43. Finally, in cursory fashion, Mother references the standard for awarding shared legal and physical custody, before encouraging this Court to reverse the trial court's order. *See id*., at 43.

The trial court examined each custody factor in a thorough and comprehensive opinion. We briefly summarize the court's findings as they relate to the custody factors raised by Mother. With regard to factor two, consideration of abuse and safety of the child, the trial court recognized the prior PFA order against Father, as well as his guilty plea to Indirect Criminal

---

[7] With respect to holidays, Mother asserts that there was testimony that she celebrates Jewish holidays. Mother's reference to the record is related to testimony presented by her friend, M.B. While Father submitted a proposed holiday schedule alternating holidays, including Yom Kippur and Rosh Hashanah, Mother presented a holiday schedule that did not include any proposed schedule for Yom Kippur or Rosh Hashanah. *See* Mother's Parenting Plan, at unnumbered 4. Father testified "holidays started dropping of[f] at [Mother]'s request . . .", including Christmas, Easter and Halloween. *See* N.T., 4/2/18, at 40-41.

Contempt. *See* Trial Court Opinion, 7/27/18, at 7-10. The court concluded factor two favored Mother. *See id*., The court also concluded that Mother engaged in medical neglect of Child based on her refusal to take Child to a doctor, and her lack of appropriate vision care for Child. *See id*., at 10-13.

On factor three, the court observed that Mother performed more parental duties during the marriage. *See id*., at 13. However, the court noted that Father also performed parental responsibilities. *See id*., at 14. The court expressed concern about the fact that Child had not seen a doctor since he was two weeks old. *See id*., at 14. Further, the court believed that Mother isolates Child, not allowing the family to celebrate holidays, go to doctors, attend public school, or contact Father's family. *See id*., at 16 The court determined factor three weighed in Father's favor. *See id*., at 16-17.

Similarly, in assessing factor four, stability and continuity in the child's life, the trial court also weighed this factor in Father's favor. *See id*., at 20-21. The court again noted the isolation of Child at Mother's home. *See id*., at 20. Additionally, the court "was impressed with Father's fiancée, with whom Father now has a child. She remained calm in the face of aggressive questioning and tone by Mother's counsel. She and Father appear to have a very stable relationship. . ." *See id*., at 19-20. The court also noted that Mother's "attempts to turn the child against Father are subtle, manipulative, and insidious", concluding that factor eight favored Father. *See id*., at 22-23. The court observed Mother made Child sad by informing him that the rest

- 13 -

of the family was picking out a new dog while Child was in Father's custody. *See id*., at 23.

The court found that Mother is incapable of making reasonable child-rearing decisions, concluding Mother had questionable judgment and attention to Child's medical and educational needs. *See id.* at 28. It also found that Mother was more focused on control, as well as proving Father was a bad parent, than acting in Child's best interest. *See id.* The court observed that Father was asking the right questions medically and attempting to assert some parental control, and Child was caught in the crossfire and being negatively impacted. *See id.* Accordingly, the court awarded sole legal custody, and primary physical custody, to Father. *See id.* The court awarded no holidays to Mother, other than Mother's Day, because the holidays did not seem important to Mother. *See id.* at 20-21.

The trial court, in a comprehensive fashion, considered and weighed all relevant factors. In essence, Mother questions the trial court's conclusions and assessments and seeks to have this Court to re-find facts, re-weigh evidence, and/or re-assess credibility in her favor. This, we may not do, absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443. As we stated in *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(quotation marks and citations omitted). The trial court wrote a detailed and exhaustive opinion discussing each factor. The trial court's conclusions are supported by the record, and we discern no error of law or abuse of discretion.

In Mother's second issue, she faults the trial court for discounting the testimony of the expert witness, Chad Schaeffer, C.A.D.C., who was qualified as an expert by Father's counsel, and testified with regard to Father's threat of harm evaluation. *See* Mother's brief, at 45. Mother recounts events of domestic violence that she contends were not in dispute. *See id*., at 45-48. Mother contends that the trial court erred in discounting these events, and the evaluator's conclusion that Father exhibits a mild to moderate proclivity towards domestic violence. *See id*., at 45-54. Ultimately, Mother faults the trial court for not crediting the testimony regarding domestic violence, and for failing to find that Mother's actions were appropriate. Mother correctly notes that "[a] party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party." *See* Pa.C.S.A. § 5328(a)(13).

With regard to expert testimony, we have stated:

> The trial court was under no obligation to delegate its decision-making authority to [an expert witness]. It is an abuse of discretion, however, for a trial court to dismiss as unpersuasive, and to totally discount, uncontradicted expert testimony. Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record.

***M.A.T.***, 989 A.2d at 19-20 (quotation marks and citations omitted).

The trial court discounted Schaeffer's testimony, writing:

Due to the rushed nature of the report at the end without Father's opportunity to respond, as well as the testimony as a whole by all witnesses to which the evaluator did not have access, the [c]ourt must reach a different conclusion. Notably, the testimony of S.F. in this case contradicts the findings by the evaluator that the relationship issues permeated the marriage. She indicated that she only became aware of conflicts between the parties near the end of the relationship. Additionally, Mother seems to be at least an equal player in the conflict. S.F. stated, "I just know that there was - it was bordering upon violence. I would hear her screaming and stuff at night, things breaking, and being thrown around." There was also an incident where the daughter observed her parents fighting in which she was asked by Father to be a witness. None of the testimony indicated that Father was more at fault in these incidences than Mother.

Trial Court Opinion, 7/27/18, at 9-10.

Schaeffer concluded that Father would pose a threat of harm to Child, while Father was interacting with a romantic partner or paramour, based upon his conclusion that Father engages in intimate partner abuse. ***See*** N.T., 3/29/18, at 11. However, Mr. Schaeffer conceded that Mother's "testimony more than any other source of information established that pattern, established that pattern [of abuse] more solidly than any other piece of information." ***Id.*** at 42. Since the court found "Father was significantly more credible than Mother," it was reasonable for the court to discount Schaeffer's testimony.

Essentially, Mother objects to the credibility determinations made by the trial court with respect to the issues regarding domestic violence. However,

- 16 -

we defer to the credibility determinations of the trial court. *See C.R.F.*, 45 A.3d at 443.

The trial court determined Father's testimony was more credible than Mother's testimony. *See* Trial Court Opinion, 7/27/18, at 8. It therefore rejected Schaeffer's opinion, which was based primarily on the credibility of Mother. The trial court appropriately considered the allegations of domestic violence, as well as Schaeffer's expert recommendation, and its findings and conclusions are supported by competent evidence of record. We find no error of law or abuse of discretion.

In her third issue, Mother faults the trial court for relying on statements and facts not in evidence. *See* Mother's brief, at 55. Initially, Mother notes the trial court's opinion references the date of marriage as occurring in 2011 rather than 2001. *See id*. Further, she contends the trial court erroneously concluded that a child abuse investigation was still ongoing, as the investigation was closed without a finding of abuse 11 days before the court issued its order. *See id*. Mother also asserts the trial court erred by referencing Mother's background to conclude that Mother knew a Section 5329 evaluation would be costly, and sought one despite her knowledge that Father did not pose a risk to Child. *See id*., at 56. Mother then references several text exchanges between Mother and Father that she contends are not included in the record but are mentioned by the court. *See id*., at 58-59.

With respect to Mother's and Father's marriage occurring in 2001, rather than 2011, the trial court acknowledged this error but states the date of marriage was "not even a slight consideration. . ." *See* Trial Court Opinion, 9/26/18, at 3. We conclude that this error is harmless. *See In re M.T.*, 607 A.2d 271, 281 (Pa. Super. 1992) (observing that an error must actually harm an appellant to justify awarding a new trial).

Similarly, the trial court notes that although Mother asserts the investigation into medical neglect was closed prior to the court entering its opinion and order, the court was not made aware of the investigation's closure. *See* Trial Court Opinion, 9/26/18, at 3. We discern no abuse of discretion, or harm for that matter, from the trial court's reference to the child abuse investigation.

Mother also challenges the trial court's observation that Mother knew the threat of harm evaluation would be costly. This issue also lacks merit. A court is entitled to reach inferences from the evidence presented utilizing common sense. *See T.D. v. E.D.*, 194 A.3d 1119, 1130 (Pa. Super. 2018). Here, Mother testified she had a Master's degree in clinical mental health counseling, as well as previous experience running her own counseling business, which had two offices. *See* N.T., 6/14/18, at 57-58. This background gave the trial court a sufficient basis to conclude Mother had a general knowledge of the costs associated with evaluations and counseling.

With regard to the text messages, the text messages purportedly contain the following information from Father to Mother: "Hey"; a text message the following day saying that the previous text was sent in error due to Father having a new phone; and "Here. A box out here you will want." **See** Mother's brief, at 58. We agree with Mother that a trial court generally may not consider evidence that is outside the record. **See M.P. v. M.P.**, 54 A.3d 950, 955 (Pa. Super. 2012). A court abuses its discretion when it relies upon outside information as the basis for its decision. **Id**.

Notwithstanding this general principle, we conclude that Mother has waived this issue. Mother's brief acknowledges that Father's written closing argument stated "details about the ICC, which were not in evidence or on the record." Mother's brief at 58. A review of the record reveals that it was Mother's counsel who suggested: "He not only texted her things that were not relevant to the children, but he put a box at her door that she was unsure of what -- he said he had a box there for her." N.T., 1/23/18, at 14. At the custody hearing, Mother's counsel requested that the court take judicial notice of the PFA criminal contempt proceedings. **See** N.T., 6/14/18, at 181. The court granted Mother's request. **See id**., at 182

Further, neither the record from the PFA, nor the ICC, is included in the certified record. It is well settled that we cannot consider anything which is not part of the record in this matter. **See Jahanshahi v. Centura Development Co., Inc.**, 816 A.2d 1179, 1183 (Pa. Super. 2003). It is the

appellant's responsibility to supply the appellate court with the complete record for appellate review. **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

Not only did Mother request that the court take judicial notice of the underlying records, she also has failed to ensure that they are included in the certified record.[8] We therefore conclude that Mother has waived this issue.

In her fourth issue, Mother asserts that the court displayed improper verbal and physical conduct towards Mother, and substituted its personal standards and bias instead of maintaining neutrality. **See** Mother's Brief, at 61. Mother notes that during the custody trial, the court made a referral to Children and Youth based on medical neglect. **See id**. Mother argues the trial court expressed repeated statements of concern for the medical welfare of Child. **See id**. Mother references Code of Judicial Conduct Rule 2.2, and faults the trial court for concluding that Child needed to see a medical doctor rather than a naturalist. **See id**., at 62-64. Mother asserts that the trial court's demeanor intimidated Mother and Mother's counsel. **See id**., at 64. Mother claims the trial court made inappropriate loud comments and gestures, rushed Mother's testimony, and yelled at Mother. **See id**., at 64-67. As an example of the trial court rushing Mother's case, she contends she did not have an

---

[8] The reproduced record also does not contain these documents.

opportunity to rebut certain portions of Sa.F.'s testimony. Mother concludes that the court should have recused itself. ***See id***., at 70.

With respect to recusal:

In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, i.e., when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

***Lomas v. Kravitz***, 170 A.3d 380, 390 (Pa. 2017) (citations omitted).

To the extent that Mother challenges the trial court's alleged bias or improper conduct, we conclude that Mother has waived this issue by failing to timely seek recusal. When Mother's counsel expressed a hope that the court would "have an open mind at least to listen . . .", the court stated that it would keep an open mind. ***See*** N.T., 6/14/18, at 14-17. At no point did Mother request recusal. Based on Mother's failure to request recusal at all, let alone at the earliest possible moment, we conclude Mother has waived this issue.[9]

With respect to the court's decision not to allow Mother to rebut Sa.F.'s testimony regarding "witchcraft," and Mother's relationship with Sa.F., we do not discern an abuse of discretion.

"Questions concerning the relevancy of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a clear

---

[9] Moreover, even if Mother had not waived this issue, our review of the record reveals that the court's actions towards Mother and her counsel were not improper, and that Mother and Father had essentially the same amount of time to testify.

abuse of discretion." ***Sprague v. Walter***, 656 A.2d 890, 907 (Pa. Super. 1995) (citation omitted).  Additionally, the standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law.  An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Jacobs v. Chatwani***, 922 A.2d 950, 960 (Pa. Super. 2007) (citation omitted).

Mother testified that Sa.F. worked for her at her counseling office.  ***See*** N.T., 6/14/18, at 109-10.  Mother testified to concerns regarding Sa.F. when she found witchcraft books:  "They were black witchcraft books.  Just putting the pieces together, with putting things in my salad dressing, was she trying to do some type of spell, you know. . ."  ***See id***., at 177.  Mother also claimed that Sa.F. attempted to poison her.  ***See id***., at 107-10.

Sa.F. then testified.  Sa.F. denied having "witchcraft" books, describing them as "young adult fictional novels like Harry Potter that most kids read." ***See id***., at 215.  She denied attempting to harm Mother, and testified that she worked every week for Mother on two or three weeknights, as well as eight hours on Saturday, and was paid $40.00 every two weeks.  ***See id***., at 207, 260-61.

Mother's counsel suggested that Mother should be permitted to respond to Sa.F.'s testimony because "she didn't know that [Sa.F.] was going to lie to the degree that she - - that she did." *See id*., at 261. The court then stated: ". . . we're done here." *See id*.

The trial court's refusal to allow Mother to provide rebuttal testimony was not an abuse of discretion. The court appropriately limited testimony regarding issues that had generally been covered, and were, at best, tangentially related to the issues in dispute.

In Mother's final issue, she asserts the trial court erred when it found Mother in contempt, and awarded Father $1,000.00 in counsel fees.[10] Mother contends that the trial court demonstrated anger towards Mother based on her refusal of Father's request to transport Child to an urgent care facility when Child vomited in November of 2017, and then refused Father custodial time because Child was sick. *See* Mother's Brief, at 72.

Mother claims that she was not comfortable traveling with Child because he was vomiting and wanted to rest. *See id*. Mother contends that she was texting Father about the situation and receiving responses from Father's paramour. *See id*., at 73. Mother asserts that Child's condition improved

---

[10] Although Mother asserted the trial court erred in denying her petition for contempt, and for assessing Mother the cost of the threat of harm evaluation, in both her concise statement of errors complained of on appeal and her statement of questions involved, the argument section of her brief does not raise these issues. Accordingly, they are waived. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011).

- 23 -

and she texted Father the next day to set up a custody exchange. *See id*., at 74.

Mother claims that she did not hear from Father directly or for the balance of the weekend. *See id*. Mother explains that she did not understand why Father's paramour was texting her rather than Father, and was attempting to do what was best for Child who was sick and too unwell to travel. *See id*., at 75. Mother claims she had no prior incidents where she violated an order of court. *See id*., at 76.[11]

The trial court observed that Father's motion for contempt related to two events. *See* Trial Court Opinion, 7/27/18, at 28-29. The first occurred when Mother failed to permit Father to exercise shared legal custody when Mother unilaterally made medical decisions for Child and refused to take Child to the doctor when Child was sick and throwing up. *See id*., at 28. Further, the court noted that Father alleged Mother withheld physical custody from Father for three days, alleging Child was too sick to visit or speak with Father, while also refusing to take Child to the doctor. *See id*. The court found Mother in contempt of the interim custody order, and awarded Father attorneys' fees of $1,000.00. *See id*., at 28-29.

---

[11] Mother's brief also asserts "[t]he trial court arbitrarily awarded Father reimbursement of attorney's fees in the amount of $1,000." Mother's brief at 75. However, Mother fails to develop this argument, and we therefore conclude that she has waived this issue. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011).

As is the case with child custody orders in general, we review a contempt order in a child custody case for an abuse of discretion. **See Garr v. Peters**, 773 A.2d 183, 189 (Pa. Super. 2001).

In order to support of finding of civil contempt, the trial court must determine "(1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Harcar v. Harcar**, 982 A.2d 1230, 1235 (Pa. Super. 2009) (citation omitted). Generally, our case law provides that trial courts should comply with the following five elements to ensure due process in a civil contempt proceeding: "(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication." **Id**., at 1234-35 (citation omitted). However, compliance with all five of these elements is not mandatory. **Id**., at 1235. "[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, 'due process requires no more than notice of the violations alleged and an opportunity for explanation and defense.'" **Diamond v. Diamond**, 792 A.2d 597, 601 (Pa. Super. 2002) (citation omitted).

The record supports the trial court's determination. The record reveals that Mother withheld custody from Father claiming Child was sick, but refused

to take Child to the doctor.[12]  **See** N.T., 6/14/18, at 23-25, 130-132; N.T., 4/2/18, at 56-58.  Although Mother asserts that Child got better the next day, and that she reached out to Father to schedule a drop-off time, Mother then ignored text messages from Father's paramour, who was the prior intermediary between Father and Mother due to the PFA, requesting when Child would be available for the custody exchange.  **See** N.T., 6/14/18, at 23-25; N.T., 4/2/18, at 56-58.  Mother then blocked the text messages from Father's paramour and, as a result, Father did not get to spend his birthday with Child.  **See** N.T., 4/2/18, at 56-58.  Given these circumstances, the trial court did not abuse its discretion when it found Mother in contempt.

For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2019

---

[12] In Mother's written closing argument, she argued that "[t]he parties position is to take a 'sick child' approach rather than a 'well child' approach, which corresponds to Mother's and Father's former religious beliefs.  Thus, when the child is sick, he should be taken to the doctor, rather than [] scheduling 'well child' visits."  Mother's closing argument at unnumbered 5.

- 26 -